ALFRED S. BROWN v. THOS. B. BEATTY.

34   227
76   640
76   641

1. CONSTITUTIONAL LAW: RIGHT OF EMINENT DOMAIN.—The right of eminent domain is an inherent and essential element of sovereignty; it results from the social compact, and would exist, without any express provision of the organic law upon the subject.

2. SAME.—The existence of the right of eminent domain is expressly recognized in the Bill of Rights (Const. Art. 1, § 13), and the only restrictions placed on its exercise are, that private property shall not be taken, or applied to public use, without the consent of the legislature, nor without just compensation being first made therefor.

3. SAME: PRIVATE PROPERTY MAY BE TAKEN FOR PUBLIC, BUT NOT FOR PRIVATE USE.—The legislature cannot, in the exercise of the right of eminent domain, provide for the appropriation of private property to a mere private enterprise, in which the public have manifestly no interest. Such a provision would be, in effect, a judicial sentence, by which the property of one citizen would be taken from him and vested in another, and therefore void; but it is not essential to the exercise of this right, that the enterprise, for which private property may be taken, should be exclusively a State undertaking, in which private individuals, as such, have no interest.

4. SAME: RAILROADS, WHEN OWNED BY INDIVIDUALS, ARE SO PUBLIC AS TO AUTHO-RIZE THE TAKING OF PRIVATE PROPERTY FOR THEIR CONSTRUCTION.—It is the right and duty of the State to promote the welfare and secure the happiness of its members, to facilitate and cheapen the transportation of the products of labor, and to increase intercourse among the citizens. The construction of railroads and other works of internal improvement, are obviously well calculated to promote these objects; and the legislature may make, or cause them to be made, at the public expense. And when such enterprises are engaged in by private individuals under charters of incorporation, although in respect to the anticipated pecuniary gain of the corporations, they may be regarded as individual and private, yet the object and purpose of the incorporation being the public advantage, they are also works of a public character. The legislature may, therefore, in the exercise of the right of eminent domain, provide for the appropriation of private property, to an incorporated railroad company,

Brown *v.* Beatty.

so far as it may be necessary, for the completion of the work, first securing the payment of a just and full compensation therefor to the owner.

5. SAME: CLAIM OF OWNER FOR DAMAGES, CANNOT BE SET OFF BY ENHANCED VALUE OF HIS REMAINING LANDS, FROM CONSIDERATION OF RAILROAD.—The Bill of Rights declares, that "no person's property shall be taken or applied to public use without the consent of the legislature, and without just compensation being first made therefor." This provision secures to the owner the right to receive, in money, the cash value of his property thus appropriated, and if it be land, also full indemnity for the damage occasioned thereby to his adjacent land; the owner cannot, therefore, be compelled to receive as compensation, the enhancement in the value of his remaining property occasioned by the improvement to which he has thus been forced to contribute.

6. STATUTE: UNCONSTITUTIONAL PROVISION DOES NOT VITIATE THE WHOLE STATUTE.—An unconstitutional provision in a statute does not affect other distinct and independent provisions, which can have operation without it; and hence, when a statute provided for the empanelling of a jury, by the sheriff, to assess the value of the land necessary for the location and building of a railroad, and directed that they should take into the estimate the benefits resulting to the owner, by reason of the location of the road on his land, towards the extinguishment of his claim for damages, the provision authorizing the empanelling of the jury, will not be affected by the unconstitutionality of the rule prescribed for estimating the damages.

7. SAME: WHEN REMEDY GIVEN BY STATUTE IS EXCLUSIVE OF THE COMMON LAW.— Where the legislature has authorized the erection of a work of internal improvement, and a mode is prescribed, by statute, for the assessment and payment of damages resulting to individuals from the construction of the work, the parties injured are confined to the remedy prescribed; which is, without any negative words used, exclusive of the remedy which would otherwise exist at common law. See 5 Eng. L. & E. Rep. 104; 5 Whart. 256; 1 Am. Railway Cases, 206; 15 Mass. 364; 16 Ib. 466; 31 Maine R. 215; 4 Wend. 669; *Contra,* see 5 Cow. 165; *Carr* v. *The Georgia Railroad Company,* 1 Kelly (Ga.) R. 524.

8. CONSTITUTIONAL LAW: JUSTICE OF THE PEACE.—The legislature may authorize a justice of the peace to issue a warrant to the sheriff, requiring him to summon a jury to assess the damages sustained by the proprietor, by reason of the location of a railroad upon his land.

IN error from the Circuit Court of Yallabusha county. Hon. William L. Harris, judge.

It is unnecessary to set out the pleadings, further than they are stated in the opinion of the court.

The defendant justified the alleged trespass, upon the ground that he was agent and contractor of the Mississippi Central Railroad Company, and he gave in evidence the proceedings and inquest of

Brown *v.* Beatty.

a jury summoned by the sheriff, under the provisions of the charter of that company, assessing the value of the land of the plaintiff used by the defendant in constructing the road, at $325; and that the company, before he entered on plaintiff's premises, tendered this amount to him.

He also proposed to prove that the plaintiff had taken an appeal from the award of the jury, and that the same was then pending in the Circuit Court. This evidence, upon objection of the plaintiff, he was not allowed to introduce.

The plaintiff had verdict and judgment for $2000, and the defendant sued out this writ of error.

*H. W. Walter*, for plaintiff in error.

The second plea of defendant below, page 11 of record, was good. It states the location of the railroad on plaintiff's land, disagreement as to value, application to a justice, issuance of a warrant, summons of a jury, that plaintiff was present when the jury came on the land and made their assessment, that he did not object to any of the jury, the assessment and tender of the money, &c. The real point of demurrer to this plea is, that it does not state that the jury were freeholders. To this we reply, the presence of the plaintiff, and his failure to object to the jury. His silence concludes him. 3 Cushing R. 1; 10 Pick. R. 275, 519; 11 Ib. 466; 1 Met. R. 508.

The first plea on *respondeat ouster* was good. It is found on page 16 of record. It recites the location of the road on plaintiff's land, disagreement as to damages, application to a justice, issuance of his warrant, that a jury of freeholders was summoned, that said jury "assessed the damages that would result to the plaintiff, by the said company's use and occupation of said land to the extent prescribed by the charter, and assessed said damages to the plaintiff's land at," &c. &c., which damages were tendered and refused, the appeal, the reduction of the inquisition to writing, &c., and that defendant, as agent, &c., entered on the land and constructed the road-bed.

What objection could be urged to this plea we cannot conceive. We suppose, however, that the constitutionality of that part of the section of the act of incorporation (Acts 1852, page 70), which

declares that the jury, in assessing the damages, if for the ground occupied by said road, shall take into the estimate the benefit resulting to such owner by reason of the road passing through said land, towards the extinguishment of such claim for damages."

For the purposes of this suit, it might be conceded that this particular clause is unconstitutional. But the whole of the section is not, therefore, unconstitutional. If the legislature pass an act that is unconstitutional, it is void only for the excess. *Commercial Bank* v. *Nolan*, 7 How. Miss. R. 532; *Exchange Bank of Columbus* v. *Hines*, 3 Ohio State R. 1 (N. S.). Concede, therefore, for argument, that the above provision is unconstitutional, the company seems so to have regarded it, and therefore each plea alleges that the jury assessed the damages which the owner would sustain by the use and occupation of the land. They disregarded the unconstitutional provision, and gave the full advantage of their assessment to the plaintiff without any offset. This was clearly for his benefit, and he cannot complain of it. The jury gave him more than by law he was entitled to, and he cannot complain. Appellee insists that the jury did not assess the damage according to a certain standard of damage, which standard, he says, was unconstitutional. The reply is, that the jury acted on the constitutional provision, and disregarded that which was to your disadvantage, and you shall not be heard to complain.

We beg to remind the court that this allegation is made in all the pleas.

But we insist that this grave constitutional question cannot be presented in this collateral way. On the trial, as shown by the bill of exceptions, it was shown that the company had assessed the damages by a jury, as by its charter was provided, and this was, by the very terms of the charter, a bar to this action, until the case as made upon the inquest was reversed by an appeal. Then the question should have been tried on the case which would properly have presented this constitutional question. As long as the inquest stood, it was conclusive not only on general principles of law, but by the very act of incorporation itself.

This brings us to the fourth error complained of in this case, and that is, that the court permitted the defendant below to read all the proceedings below, to show the condemnation of the land, but re-

jected evidence to show that plaintiff had appealed, and that said appeal was then pending. It was right that defendant should show that there was a continued reliance on the inquest, and that plaintiff himself did not regard it either as a nullity or as waived, but that he was still fighting the case. We had the right to the whole of the proceedings on the inquest or no portion of it.

But it is insisted that the whole proceeding was a nullity, as plaintiff below had no notice of the assessment of his damages. The proceeding was *in rem*, and the legislature made no provision for notice. The very entry on the land was notice. This point has been fully decided in the case of *Stewart* v. *Board of Police of Hinds County*, 25 Miss. R. 479.

But we insist that there is a question which lies at the very foundation of this case, and which must dispose of it in favor of plaintiff in error. It is well settled, that when the legislature, under the right of eminent domain, and for the purpose of works of public use, authorizes an act or series of acts to be done, the natural consequence of which will be injurious to third persons, and prescribes a mode for assessing damage for those injuries, that an action *in tort* will not lie at common law, but the statutory remedy must be pursued.

This point has been settled in England in the case of the *Northwestern R. R. Co.* v. *Bradley*, 5 Eng. L. & Eq. R. 104; in Maine, in *Mason* v. *Kennebeck and Portland R. R. Co.*, 31 Maine R. 215; in New Hampshire, in *Lebanon* v. *Olcott*, 1 N. H. R. 339; in Massachusetts, in *Dodge* v. *County Commissioners of Essex*, 3 Met. R. 380; in New York, in *Calkling* v. *Baldwin*, 4 Wend. 667; in Pennsylvania, in *Knorr* v. *Germantown R. R. Co.*, 5 Whart. 256; in New Jersey, in *Aldrich* v. *Cheshire R. R. Co.*, 1 Foster, 359; in Illinois, 3 Carter, 285; in Alabama, *Dyer* v. *Tuscaloosa Bridge Co.*, 2 Porter, 296; in Connecticut, 9 Conn. R. 436; and also in Vermont, Virginia, and South Carolina. The question in this case is directly raised by the second plea on *respondeat ouster*, the replication thereto, and demurrer to replication. Under the charter, either party may apply for the warrant upon the location of the road, it being due the proprietor that he should have immediate compensation, as the company might not commence the work for years after the location, and it being due to the company that they should not be delayed, should they desire immediate posses-

sion.   We insist, therefore, that the plaintiff below was not entitled to a common law remedy.

We insist, further, that the demurrers should have extended back to that most singular, anomalous, and uncertain paper, which was intended as an amended complaint.   It is uncertain in every particular.

The constitutional objection, that the justice could not issue the warrant, is untenable.   He is called upon simply to issue a process, upon which he is required to pass no judgment, and take no action. He may, by law, issue an attachment for any amount of money; but, if more than fifty dollars, it is returned to another tribunal, and his jurisdiction, if it may be so called, is at an end.   He simply issues process, as he does in the case at bar.

*W. Brooke* and *F. M. Aldridge,* on same side.

The arguments of Messrs. Brooke and Aldridge were mostly confined to the points made on the pleadings, and as they were not passed on by the court, are not given.

*C. G. Armistead,* for defendant in error.

There is no error in the judgment of the court below, sustaining the demurrers to the first and second pleas of appellant.

The pleas do not allege that the assessment of damages, relied on as a bar to this suit, was made in conformity with the provisions of the charter of the Miss. Central Railroad Company; but, in setting out the manner in which the assessment was made, show that the provisions of said charter were not pursued.

The charter requires that the damages shall be assessed by a jury of disinterested freeholders.   The pleas, after stating the manner in which the warrant of the justice of the peace was applied for, how issued, and placed in the hands of the sheriff, allege that a jury was summoned by the sheriff, who assessed the damages, &c. They do not show that the jury who assessed the damages were composed of twelve disinterested freeholders.

In the execution of a power in derogation of the common law, nothing can be presumed; but everything essential to its due execution must be alleged and proven.

In the case of *Sharp* v. *Speir,* 4 Hill's R. 86, the court say:

"Every statute authority, in derogation of common law, to divest the title of one, and transfer it to another, must be strictly pursued, or the title will not pass." They further say, "that this is a mere naked power in the corporation, and its due execution is not to be made out by intendment. He must show, step by step, that everything has been done which the statute makes essential to the due execution of the power." The same principle is decided in the cases of *Williams* v. *Payton*, 4 Wheaton, 77; *Rankendorf* v. *Taylor*, 4 Peters, 349, 359; *Jackson* v. *Shepard*, 7 Cowen, 88; *Atkins* v. *Kinnan*, 20 Wendell, 241, 245; *Thatcher* v. *Powell*, 6 Wheat. 119; *Jackson* v. *East*, 7 Wendell, 148.

It is further contended that said pleas were bad in this: they each contain two distinct matters of defence.

1. The assessment of damages under the charter,—a matter of defence in bar.

2. The pendency of the appeal, taken by the appellee from verdict of the jury of assessment,—a matter of defence in abatement.

In the case of *Boswell* v. *Tunnell*, 10 Ala. R. 958, the court held that a plea "that the plaintiff impleaded the defendant for the same cause of action in a justice's court, and there obtained a judgment against him, which he appealed to the County Court, where the appeal was binding at the return term of the writ, is a good plea in abatement."

The eighth section of the Mississippi Central Railroad charter, upon which the appellant bases his defence, provides, "That when the president and directors of said company cannot agree with the owner of lands over which said road shall pass, that either party may apply to a magistrate for a warrant directed to and requiring the sheriff to summon twelve disinterested freeholders, who shall be sworn by said justice or sheriff, to assess the damages, &c. &c. And that in making their assessment they shall take into consideration the benefits or advantages resulting to said owner by reason of the construction of said railroad through his lands."

This section of said charter is contrary to the great principle of equal rights upon which our government is founded, and violative of the very letter of its constitution.

Private property cannot be taken for public uses without just compensation to the owner.

What is just compensation, and how is that question to be determined?

In the case of *Bloodgood* v. *Mohawk and H. R. R. Company*, 18 Wendall, page 35, the New York Court of Errors say : "There can be no diversity of opinion as to the meaning of the words *just compensation;* it is a fair equivalent in *money*—a *quid pro quo;* it is a recompense in value for the property taken."

The same doctrine is held in 2 Dallas, 315 ; 9 Dana, 114 ; *Parham* v. *Justices of Decatur County,* 9 Ga. R. 341, 351.

In the case of *Woodfolk* v. *The Nashville and Chattanooga R. R. Company,* 2 Swans. R. 422, the Supreme Court of Tennessee decide, that when the legislature, in the exercise of a power conferred by the constitution, assumes to appropriate the property of a private individual to a public use, in the construction of a railroad, it cannot prescribe how much, and in what, the owner shall be compensated for the property so appropriated. The value of the property taken must be assessed by a just and proper tribunal, and the amount paid in money. It is a debt against those who take the property, and must be paid as all other debts.

The owner thus deprived of his property cannot be coerced to receive as compensation ameliorations of his remaining property, or the enhancement of its value, or any other benefit or advantage, either real or imaginary, that may be conferred upon him.

The measure of the compensation to be made to the owner in such case, is the fair *cash* value of the property taken at the place, and in the form taken. The incidental damages or benefits, which are to result to him from whom the property is taken, from the use to which it is to be applied, form no element in the computation of the compensation. It is useless to go further for authority on this point ; no other is necessary. It then follows, that if the provisions of the charter authorizing and directing the assessment were unconstitutional, the action of the jury affords no protection to the appellant.

In the case of *Sharp* v. *Speir,* 4 Hill R. 89, above cited, the court say : "There is but little, if anything, of a judicial nature in the proceedings of corporations to take lands either by way of assessments or for public use." 2 Hill, 9–14.

As a further objection to the validity of the assessment relied on

by appellant, I insist that the justice of the peace who issued the warrant for the jury of assessment, had no jurisdiction over the matter in his official capacity, and that it could not be given him by the legislature.

By Article 4th, sec. 23, Revised Constitution of this State, the jurisdiction of justices of the peace is expressly limited to causes in which the principal of the amount in controversy does not exceed fifty dollars.

By the same instrument, the jurisdiction of boards of police is given, over all roads, highways, ferries, and other matters of county police. Article 4th, sec. 20.

And the jurisdiction of the Probate Court confined to matters testamentary and of administration in orphans' business, &c. &c. Article 4th, sec. 18.

The eighth section of said railroad charter, above quoted, confers upon a justice of the peace the power of issuing his warrant to the sheriff, requiring him to summon twelve disinterested freeholders, as a jury of inquest of damages. The inquisition of said jury to be reduced to writing, signed, sealed, and recorded in the probate clerk's office, &c. &c.

This clause of said charter does not create an inferior court, but confers upon a justice of the peace jurisdiction over a matter pertaining exclusively to the jurisdiction of the boards of police.

The warrant was returned before the justice, together with the inquest of the jury. No judgment appears to have been rendered upon it. The justice of the peace clearly had no jurisdiction of the matter; neither had the Probate Court. And if an appeal was afterwards taken, it could not affect the validity of the transaction; for, "an action void in itself cannot be made valid by matters subsequently."

*E. L. Acee,* on same side.

The eighth section of the charter of this company is void; and all the proceedings had in pursuance thereof in this case are also void, because they conflict with that provision of the Constitution of the State, which says: "Nor shall any person's property be taken, or applied to public use, without the consent of the legislature, and without just compensation first being made therefor."

In the case of *Rice et al.* v. *Danville, Lancaster, and Nicholas-ville Turnpike Company*, 7 Dana, 81, 82, it is expressly laid down, "that an owner of private property cannot be required to pay, in any direct mode, for any benefit or advantage which may accrue to him from public improvements, for the constitution protects him against all such demands."

The same principle was recognized in the case of *Sutton's Heirs* v. *The City of Louisville*, 5 Dana, 30.

The above cases grew out of a provision in the charters of the above companies, similar to the one at bar.

Again, the doctrine is expressly laid down, that "where private property is required for public uses, the owner is, by the constitution, entitled to a just compensation for it in money." *Thompson* v. *Grand Gulf Railroad and Banking Company*, 3 How. Miss. 246; 2 Kent Com. 339, note.

And the jury cannot deduct from the damages sustained by the owner by the location of the road, the estimated value of advantages conferred by said location. *Jacob* v. *City of Louisville*, 9 Dana, 113, 114, 115, 116; *James River and Kanawha Company* v. *Turner*, 9 Leigh, 313, 335, 338.

All these cases avowedly, plainly, and distinctly deny the right of deduction, for the supposed advantages the location of the road might confer. See also *Milwaukee and Mississippi Railroad Company* v. *Eble*, 4 Chandler's R. 84, 85.

The said eighth section, therefore, in requiring the jury of inquest, "in estimating the damages" sustained by the owner, "to take into the estimate the benefit resulting to such owner or owners by reason of said road passing through or upon said land," towards the extinguishment of such claim for damages, was illegal, unconstitutional, and void; and the action of the jury (see pages of Transcript, 40, 41), in making such a deduction, was equally illegal and void, and consequently failed to divest Beatty of his title to that portion of the land so assessed.

This first plea on *respondeat ouster*, therefore, in setting out the proceedings of said jury by making their inquisition a part thereof, showed on its face that said company had no right to said land; that Brown became a trespasser when he took possession of the same, and that the plaintiff was entitled to a recovery. In the

words of one of the causes of demurrer assigned, it set up no sufficient defence in law.

For these causes, the demurrers were sustained to said three pleas.

A statute, authorizing an incorporated company to take private property, without compensation to the injured party, is unconstitutional.

The assessment must be equitable, and the compensation adequate, or the act is unconstitutional and void. *Thacher* v. *Dartmouth Bridge Co.*, 18 Pickering's R. 501; *Sinnickson* v. *Jackson*, 4 Harrison's N. J. R. 129; *Chadwick* v. *Haverhill Bridge Co.*, 2 Dane's Abr. 686; *Stevens* v. *Middlesex Canal Co.*, 12 Mass. 466.

In the case at bar, the assessment was not equitable, nor was the compensation adequate, because the jury deducted from the damages sustained, the value of the supposed benefits that the location of the road might confer; and, on this account, the whole proceedings were irregular and void, being in direct conflict with the constitution.

Brown was, then, a trespasser, and subjected himself to the suit brought against him.

But it is contended, by the appellant's (Brown's) counsel, that this suit could not be instituted while the appeal from the verdict of the jury was pending.

In reply to this, I urge, that the action of the jury below was illegal and void, and the appeal was only taken to have the proceedings below set aside, which was done. When the appeal was taken, it was done with a protest. See *Mississippi Central Railroad Co.* v. *T. B. Beatty*, No. 7820, page 12, denying the legality and constitutionality of the whole proceedings.

The position I take is, that the whole eighth section, in relation to the manner and means of assessing damages, is void; that, in consequence of this defect in the charter of the company, no provision is made for the assessment of damages to the proprietors of lands; and, consequently, that the injured party is remitted to his common law remedy for trespasses committed on his property by the company, or their agents, or contractors.

But a much stronger position is sustained by numerous authorities. The doctrine laid down is, that " if a statute gives a remedy in the affirmative, without a negative, express or implied, for a

matter which was actionable by the common law, the party may sue at common law, as well as upon the statute, for this does not take away the common law remedy." 1 Comyn's Digest, 447, C; 1 Chitty's Pleadings, 144; *Rex* v. *Robinson*, 2 Burr, 803; 1 Saun. R. 136, note 4; 1 Kelly (Geo. R.), 556, 557.

I know that some of the New York cases go to the extent, that where a statute gives a remedy, that the common law remedy is taken away; but, by a close inspection of all these cases, it will be seen that the party injured took the benefit of the statute remedy. But, in the case at bar, Beatty has already refused to acquiesce in the proceedings under this charter; has denied their legality; has treated the parties all the time as trespassers (see Transcript, page 27); forbidding Brown, by letter, from entering upon his land, and now claims damages for the trespasses committed.

" Until compensation is made, a street cannot be opened or used; but an entry to grade, or to prepare the ground for that purpose, would be illegal, and the persons so entering would be responsible in damages to the owner of the property." *Steuart* v. *The Mayor and City Council of Baltimore*, 7 Maryland R. 516; Baldwin's Reports, 224; 10 Watts, 63.

SMITH, C. J., delivered the opinion of the court.

This suit was brought in the Circuit Court of Yallabusha, to recover damages for injuries done to the lands of the plaintiff. The acts of trespass complained of were alleged to have been committed by the defendant, pretending to act as the agent and contractor of the Mississippi Central Railroad Company. A verdict and judgment were rendered for the plaintiff. A motion was made for a new trial, which was overruled; whereupon the defendant excepted, and sued out this writ of error.

Several points are made upon the pleadings. But, as the defence relied on was available under the answer, denying, generally, the allegations of the complaint, and as all of the evidence is contained in the bill of exceptions, we will consider the questions arising upon the merits of the controversy, in connection with the judgment upon the motion for a new trial.

It is conceded that, if the defence set up was invalid, the verdict was warranted by the evidence. It is, therefore, unnecessary,

at least for the present, to notice more particularly the testimony adduced by the plaintiff.

The defence rests, first, upon the validity of certain provisions in the charter of the Mississippi Central Railroad Company, and generally upon the question, whether the remedy therein provided, for a party aggrieved by the assessment of damages by the jury of inquest, is not exclusive of the remedy existing at common law for injuries done to property condemned for the uses of the company.

Without specially examining the evidence offered in behalf of the defendant, it is sufficient to state, generally, that if the provisions of the charter, above adverted to, should be upheld, and the remedy provided in the act of incorporation is the only one to which the plaintiff was entitled to resort, the verdict ought to be set aside, and a new trial granted.

The cause appears to have been submitted to the jury without instructions. We are, hence, at a loss to understand the precise grounds upon which the court proceeded in overruling the motion for a new trial. We may suppose that the court acted upon the reasons assigned by counsel, in this court, in defence of the judgment; or that the more comprehensive ground was assumed, that it is incompetent for the legislature, by law, to provide for the appropriation of the private property of the citizen to incorporated companies, created for the purpose of constructing railroads or other works of internal improvement.

In reference to this latter ground, very little, at this day, is required to be said.

The right of *eminent domain* is an inherent and essential element of sovereignty. It results from the social compact; and hence, would exist without any express provision of the organic law upon the subject. In this commonwealth, its existence is recognized in the Bill of Rights. And the only restrictions placed upon its exercise, are that private property shall not be taken or applied to public use without the consent of the legislature, nor without just compensation being first made therefor. Bill of Rights, sect. 13.

No question can be made in regard to the existence of the right. In the case before us, and all similar cases, the sole in-

quiry is, whether the condemnation and appropriation of the land for the purposes and in the mode prescribed in the charter is the taking and application of private property to public use, according to the true construction of the Bill of Rights ?

If the construction of the Mississippi Central Railroad were a mere private enterprise, in which the people of the State have, manifestly, no interest, the provisions of the charter under which the plaintiff's lands were taken are clearly unconstitutional. It would not, in that view, be an act of legislation done in the exercise of the right of *eminent domain*. It would, in effect, be a judicial sentence, by which the property of one citizen would be taken from him and vested in others, and therefore void.

It is the object and primary duty of every commonwealth to promote the welfare and to secure the happiness of its members. And it is undoubtedly the right, as well as the duty, of the legislature to advance these objects by a wise and judicious exercise of its delegated authority. To facilitate and cheapen the transportation of the products of labor, and to increase the intercourse amongst the citizens, are amongst the means, obviously, best calculated to promote these objects. Railroads, and similar works of internal improvement, are the appliances best adapted to these purposes. Consequently, when the legislature deems such works expedient, the duty and right devolves upon it to make them, or to cause them to be made at the public expense. But even where such enterprises are engaged in by individuals under charters of incorporation, they are not the less undertakings in which the public have an interest. They are public works, intended to promote the interests of the community. The individual corporators, in the anticipated pecuniary benefit which may result to them, have an object and an interest distinct from that of the public. In that respect the enterprise is individual, and the corporation private. But the object and purpose of the incorporation are the public advantage. This gives to the work its public character. A corporation created by the legislature with a view to the construction of a work of public utility, is the agency or means by which its intentions are designed to be carried into effect. When, therefore, the object justifies it, that is when, by means of an incorporated company, it is proposed to construct any work of internal improvement,

useful and beneficial to the public; and it is necessary to the completion of the work, all the authorities hold (and there seems upon principle no reason to doubt) that, in the exercise of the right of eminent domain, the legislature may, by law, provide for taking and applying private property to that purpose, a just and full compensation being first made to the owner therefor. Indeed, this precise question, although never before directly and expressly decided in this court, was scarcely to be considered an open one.

The eighth section of the charter of the Mississippi Central Railroad Company, upon which the plaintiff in error based his defence, provides that when said company cannot agree upon the price with the owner of land over which said road shall pass, that either party may apply to a magistrate, for a warrant directed to and requiring the sheriff to summon twelve disinterested freeholders of his county, "who shall act as a jury of inquest of damages, having an oath or affirmation administered first to each, by said sheriff or justice of the peace, justly and impartially to value the damage which the owner or owners will sustain by the use and occupation of the land, &c., required by said company; and the jury, in estimating the damages, if for the ground occupied by said road, shall take into the estimate the benefit resulting to such owner or owners, by reason of said road passing through or upon said land, towards the extinguishment of such claim for damages," &c.

It is said, by counsel for the defendant in error, that the whole proceeding in regard to the assessment of the damages was illegal and void: 1, because the authority conferred upon the magistrate to summon the jury was void, being repugnant to the constitution; 2, because full and exclusive jurisdiction over the subject of roads is vested, by the constitution, in the Board of County Police; and 3, because the mode prescribed for making the assessment of the damage to the land violates the constitution of this State.

The first and second objections do not appear to be pressed with confidence by counsel; and as, in our opinion, they are clearly untenable, we will pass to the consideration of the third.

The party, at the time the assessment was made, was entitled to "just compensation" for the injury sustained in consequence of the appropriation of his property to the uses of the road. No diversity can exist as to the true construction of the language of the Bill of

Rights. He was entitled to the cash value of the land when the assessment was made, and also to be indemnified for the damage to his adjacent land, consequent upon the location of the road. He was entitled to be paid in money. It was as clearly incompetent for the legislature to prescribe in what he should be paid, as to prescribe how much or how little he should receive. Manifestly, a party whose property has been taken and appropriated to public use in the construction of a railroad, cannot be compelled to receive as compensation the estimated enhancement in the value of his remaining property. The cash value and the actual damage are the true standard by which to determine the compensation, to which in such cases, the party is entitled. We think, therefore, that the provision in the eighth section, by which the jury are directed, in assessing the damages, when land is the subject, to take into the estimate as an offset to the claim of compensation, "the benefit" to the owner, resulting from the location of the road upon his land, is invalid.

But because this provision is repugnant to the Bill of Rights, and therefore void, it does not follow that the other provisions, which are distinct and independent of this, are also invalid. The reverse, according to the settled rule of construction, is the case. The authority given, and the duty imposed upon the jury, "justly and impartially to value the damages," is in nowise dependent upon the provision, by which the jury are directed to take into the estimate of the damages, the consequential benefit to the owner of the land. It was, hence, a valid legislative enactment. And as the jury proceeded under legal authority, their verdict, whether erroneous or not, was clearly not void. It was sufficient under the provisions of the charter, upon tender of the damages by the company, to vest the title to the land in them, unless set aside in the mode prescribed in the act of incorporation.

The jury were not bound to observe the unconstitutional provision. But if, in point of fact, they did take into the estimate the consequential benefit to the owner of the land, the verdict was erroneous and unjust. And a remedy, if the party felt himself aggrieved, was provided in the act of incorporation. This brings up the question, whether the remedy therein prescribed is a bar to the present action.

The eighth section of the charter provides that either party, the company, or the person whose lands have been condemned, may, within ten days, appeal from the decision of the jury to the Circuit Court of the county in which the land is situated; and that said court shall proceed in such cases as in cases of appeal from the boards of police, in relation to public roads.

In some of the adjudged cases it has been held that the remedy provided by statute for the assessment of damages is merely cumulative, and not exclusive. And hence, that the owner may maintain an action at common law, for the injury sustained. *Wilson* v. *Crittenden*, 5 Cow. Rep. 165; *Carr* v. *The Georgia Railroad Company*, 1 Kelley, 524.

These decisions seem to be based upon the principle that, if a statute gives a remedy in the affirmative for a matter which was actionable at the common law, the injured party may sue at common law as well as upon the statute.

But in the class of cases analogous to the one before us, the question is not whether an action might, at common law, be maintained against a party for unlawful acts, done to the injury of others, but whether an action is maintainable, for acts committed under the authority and sanction of the law, but which have proved injurious to others.

The acts complained of in this case, if done without authority of law, would be wholly unjustifiable. But having been performed in the execution of a power conferred by the legislature, and of consequence under the sanction of the law, their legal character was changed. It would be absurd to say that they were tortious and illegal. If the defendant had a right to construct the road-bed upon the land of the plaintiff, what wrong was committed? The very nature of the action of trespass presupposes the unlawful character of the acts complained of. Upon principle, therefore, it is clear that this action was not maintainable. The case comes completely within the rule that, "if an affirmative statute which is introductory of a new law, direct a thing to be done in a certain manner, that thing shall not, even although there are no negative words, be done in any other manner." Dwarr. on St. 641. According to which it is held, in the great majority of cases, that when the legislature has authorized the erection of works of in-

ternal improvement, deemed convenient and useful to the public, and a mode is provided, by statute, for the assessment and payment of damages resulting to individuals from the construction of such works, that parties injured are confined to the remedy prescribed, which is substituted for the remedy which would otherwise exist at common law.  5 Eng. L. & E. Rep. 104; 5 Whart. 256; 1 Am. Railway Cases, 206; 15 Mass. R. 364; 16 Ib. 466; 31 Maine R. 215; 4 Wend. 667.

In this case the legislature has gone farther.  It has prescribed the mode of assessment and payment, given to the aggrieved party the right of appeal, and declared that the "inquest of the jury, after payment or tender of the valuation, shall be admitted to record in the office of the clerk of probates of the proper county, and be a bar to all actions for taking and using such property."  Charter, 8th sec.  We are, therefore, after a careful examination of the whole subject, clearly of opinion that this action was not maintainable for any injury alleged to be done to the land within the limits of the road-way.

There was, however, evidence before the jury that acts of trespass were committed upon the land of the plaintiff, adjoining the road-way.  And of consequence this action was maintainable to recover damages for the injuries thereby occasioned.  But as it is evident from the record, that the jury estimated the damages, mainly, with reference to the injury occasioned by the location of the road upon the plaintiff's lands, and the work done upon the road-way, such as making excavations, embankments, &c., necessary in the construction of the bed of the road; and that the injuries done to the adjoining land formed a very inconsiderable item in their estimate of the whole injury sustained, it would be extremely unjust and improper to allow the verdict to stand.

Judgment reversed, and cause remanded for a new trial.

HANDY, J., did not concur in the above opinion, upon the point, that the part of the statute allowing the jury of inquest to take into consideration the advantages to accrue to the adjacent lands of the proprietor over whose land the railroad passed, in consequence of the construction of the railroad, is unconstitutional. He was of opinion that that question was not legitimately pre-

sented for decision in this case, as the verdict of the jury, being under valid authority, was not to be called in question in this collateral proceeding, and could only be examined upon a direct proceeding, bringing before this court the proceedings taken for the valuation of the land condemned for the use of the railroad; and he further expressed his inclination to the opinion that, if that question had been properly presented, it was competent for the legislature to authorize the jury of inquest to take into consideration all the direct advantages and disadvantages arising to the proprietor of the contiguous lands for the construction of the railroad over his lands, and to assess the damages accordingly; reserving to himself the expression of an opinion more fully upon this point when the question should be presented for adjudication.