JOHN S. PENRICE v. ELIJAH A. WALLIS et al.

1. CONSTITUTIONAL LAW: CONDEMNATION OF PRIVATE PROPERTY TO PUBLIC USE: PUBLIC PROTECTION.—In cases of public emergencies, such as the calamities of fire, flood, war, pestilence, and famine, private property may be taken and applied to public use without just compensation being first made therefor, upon the principle of imperative necessity for the public protection; but in order to

Penrice *v.* Wallis et al.

justify such appropriation, the necessity must be apparently present, and the apprehended danger must be so imminent and impending, as not to admit of the delay incident to legal proceedings for the condemnation of the property.

2. SAME: SAME: RULE IN RELATION TO COMPENSATION.—The rule recognized by this court in *Brown* v. *Beatty*, 34 Miss. R. 227, and *Isom* v. *Miss. Cent. R. R.* *Co.*, 36 Miss. 300, that the compensation to be paid to the owner of property taken for the public use, is not to be diminished by any advantages which may accrue to him by the construction of the public work to which it is applied, is approved and confirmed.

3. SAME: SAME: REMEDY OF OWNER BY INJUNCTION—The owner is entitled to an injunction against persons charged with the construction of a public improvement, restraining them from using his property for that purpose, until compensation has been duly made therefor.

4. CHANCERY: APPEAL: INJUNCTION.—An appeal from an order dissolving an injunction, if allowed, necessarily suspends its operation, and it will be error, therefore, for the chancellor, pending the appeal, to make an order allowing the defendant to do the thing restrained by the injunction.

5. HIGH COURT: WILL NOT NOTICE OBJECTIONS NOT MADE IN THE COURT BELOW.— When both parties are present at the hearing of a motion to dissolve an injunction, and no objection is made as to the sufficiency of the notice of the motion, this court will not notice the objection when made here, on appeal from the order of the chancellor dissolving the injunction.

APPEAL from the Chancery Court of Washington county.    Hon. J. S. Yerger, chancellor.

On the 4th day of February, A. D. 1859, the appellant filed his bill in the court below, in which he alleged that he was the owner of lot No. 1, in Section No. 9, in Township 18, Range 8 west, on which the town of Greenville is situated ; that said lot is embraced in Levee District No. 3, in Washington county ; that the defendants, acting as levee commissioners, under appointment from the board of police of that county, have located a route for a new levee on his said land ; that the old levee runs in front of complainant's lot, on the bank of the Mississippi river, and is now in a complete state ; that the route of the new levee, as marked out by the defendants, runs farther back, leaving complainant's warehouse inside of it, and next to the river, and cutting off a part of the yard of his tavern ; that the purpose of the defendant is to appropriate complainant's land to the building of the new levee, which, if built on the route marked out, will greatly injure him; and that the defen-

dants have already appointed persons to build the said new levee, who are about to commence the work on complainant's land.

It is further alleged that there is no public necessity for the erection of the new levee; and that no compensation has been paid or tendered to complainant for the appropriation of his property which defendants are about to make. The validity of the appointment of the defendants as levee commissioners, and their right, under the law of 1858, to make the location of the new levee, is attacked by the bill, but it is unnecessary to set out the allegations on the subject, as they were not passed on by the court.

The prayer was for an injunction against the erection of the levee. An injunction was granted on the day the bill was filed.

On the 26th February, the defendants filed their answer, in which they admit they were about erecting a new levee on complainant's land, as stated in the bill, when the work was arrested by the injunction.

The answer further states, that on the 21st of February, 1859, the board of police of said county, in pursuance of the provisions of the 6th section of the Act of 1850, entitled An act to amend the levee laws of Washington county, ordered the sheriff to summon a jury of twelve freeholders, to assess the damages accruing to the plaintiff, which jury was summoned, and assembled on the 24th of February, and after a careful examination of the premises, returned a verdict of "no damages," which said verdict is made Exhibit B. to the answer.

The answer continues as follows : " Respondents would further state to your honor, that they consider the old levee in front of complainant's warehouse very insecure against the next high water, as the bank of the river has fallen in to within a very few feet of the base of said levee; that the river is now rising rapidly ; and that as they have now complied with what they believe to be the law," they asked that the injunction be dissolved.

The answer also denied the grounds on which the validity of defendants' appointment was attacked.

The verdict of the jury recited, that after examining the premises, " and after taking into consideration the advantages and disadvantages of said levee to said Penrice, we the said jurors assess no damages for the said Penrice."

On the 2d March, the defendants served a notice on complainant of their motion to dissolve the injunction, to be heard on the 12th of that month; and accordingly, on the last-mentioned day, the parties appeared before Judge Yerger, in vacation, who, on the 28th of March, ordered the injunction to be dissolved. On the 1st of April, complainant prayed for an appeal, which was granted; but, as the order recites, " the appeal is not to operate as a supersedeas to the decree dissolving the injunction, and authorizing the defendants to proceed with the construction of levee complained of."

*W. P. Harris*, for appellant.

The bill makes a clear case for an injunction. It states, as one ground, that the parties engaged in constructing the levee, are acting without authority, and this depends on the construction of the Act of 1850, and the subsequent Act of 1858. On this point we refer to the brief on file by Mr. Nugent.

It states another ground, that there was at the time no public necessity for an appropriation of his property, and no compensation made to him for it, or offered to be made. This was true at the date of filing the bill. The answer asserts only that fears are entertained that the old levee might not stand the rise which was anticipated or apprehended: no proof was made by the defendants on this material point. It was, therefore, an appropriation in advance of an event which might or might not occur.

The Act of 1850 is liable to the objection which this court has declared to exist in all the legislation authorizing railroad companies to appropriate property. It directs the jury to consider the advantages and disadvantages of a prospective enterprise or improvement, and to set the one against the other. It is admitted here, that the commissioners intend to appropriate the land of the complainant, and there is no means provided by which the value of the property thus taken is to be ascertained, and paid to the owner. The provision is simply that a jury shall estimate " advantages and disadvantages," and it appears that the jury did make the estimate, and declared that advantages considered in connection with the appropriation of the plaintiff's land, to deprive him of it, occasioned him no damage. The verdict is made final.

It has been said, with truth, that a public necessity can always

be created, when a combination of persons wish to appropriate private property; and this court has said, with equal truth, that the plea of necessity is the common pretext of usurpation and oppression.

These commissioners might, at any time, declare their belief that a bank would cave in, or that the river would rise, and, in anticipation of these events, appropriate property or destroy it. The jury, called to assess damages, consider advantages, with reference to remote dangers, and pronounce the appropriation "no damage."

Here, by the act of the commissioners, the warehouse is placed between the old and new levees; of course the old levee is to be abandoned, and not kept in repair, and the result is, that the warehouse is not protected; in addition to this, the soil of the plaintiff's town lots are actually occupied by the public. If the jury were directed, according to the meaning of the Constitution, to assess the value of the property taken in money, the money's worth of land used, and the incidental injury to other property besides, their verdict might constitute a bar, but they are not so directed, and did not undertake to estimate the value of the property appropriated, and the proceeding shows they did not.

There can be no doubt that constructing a levee upon the soil of a private person, out of earth and other materials taken from his land, is an appropriation of private property. It is a conversion of it in such way as to deprive the owner of the use of it. In view, therefore, of the decision of this court, and of what may now be considered the settled doctrine in this State, there is but a single question to be considered, and that is, whether the case of constructing a levee against an anticipated overflow of the Mississippi river, is the case of urgent necessity; that sort of remedy against impending calamity which pertains to the right of self-preservation, belonging to communities and individuals, and for which they are not responsible to the sufferers. It has been assumed, that the right to raze buildings in order to prevent the spread of a conflagration, to erect temporary defences against an enemy actually besieging a town, are acts for which neither communities nor individuals are responsible. They are said to be excused on the ground of imperative necessity.

It is questionable if the duty of making compensation does not

exist in such cases, with this difference, that the public need not wait for the owner's consent, or pay, or offer to pay, the damages in advance of the appropriation. Be this as it may, there is a distinction between the cases mentioned and those permanent arrangements made against prospective dangers. There is a difference between fortifying a town, in the apprehension that in future it may be attacked, or the widening of streets to prevent contact, as a provision against future apprehended conflagration; and the fortification in the midst of an attack, and acts done while the flames are raging. It is important to preserve the distinction, lest the constitutional provision should become illusory. Arrangements and measures in anticipation of future calamities, fall under the protection of the Constitution. *American Printworks* v. *Lawrence*, 3 Zabriskie, 606.

The levee system was projected with a view to the reclamation of swamp lands, and to protect property from the effects of inundation. The system was adopted with reference to prospective dangers. It is an experiment as yet. It was not adopted under the pressure of necessity, but as other measures of internal improvement, and stands upon no higher principle than that on which a system of drainage, carried on at public expense, would stand. It is sufficient, on this point, to say that the legislature has treated it as a measure of general expediency, and not of necessity, and has undertaken to provide for compensation, but made an inadequate provision; there was ample time to negotiate with the owner, or to proceed when the value of the property was ascertained.

It cannot be assimilated to the case of *Radcliff's Exors.* v. *The Mayor of New York*, where damages were occasioned by the laying out of a new street, to the property near it. The court say expressly, in that case, that the right of way had been obtained, and that the land on which the street was laid out had been obtained from the owner. The consequential injury to private interests in the neighborhood was not provided for, and the court held that the constitutional provision did not extend to such incidental injuries. 4 Comstock, 195.

Here, it is alleged in the bill and admitted by the answer, that the plaintiff's land had been taken; the levee was to be built upon part of the land, and from part of it, and no compensation had

been made. He is entitled to the dry value of his land in any event. 2 Kent, 8th ed., p. 400, and note.

This court has not subscribed to the doctrine, that a statute which provides for the taking of private property without making any provision for compensation, is valid, on the idea that the legislature may thereafter make compensation or provide for it. On the contrary, they have held that parties taking property under such a law, if not trespassers, may be restrained, unless by judicial process the consent of the owner is obtained. "It was not designed by the Constitution," says Judge Sharkey in *Thompson v. The Grand Gulf Bank*, 3 How. (Miss.) 240, "simply to give the owner a remedy; nor is it a compliance with the Constitution for the legislature to provide a means by which the owner may acquire compensation." We insist that the result of the decisions on this question, so far as this court is concerned, is to throw upon those who appropriate private property the duty of obtaining the consent of the owner, where no provision, or an ineffectual one, is made by law, for ascertaining the damages; and if such a provision be made, that they shall proceed to have the value ascertained, and tender it to the owner.

In this case there was no compensation offered, and no consent given. The owner proceeded to restrain the parties "on the paramount authority of the Consitution."

It was not necessary for him to apply for redress under a statute which gave no redress, which authorized the jury to estimate speculative "advantages" as compensation, and the evidence of the clerk therefore, which tends to prove that the complainant did not apply for a jury to assess damages, does not alter the case. It was sufficient that he did not consent to the appropriation, and had filed his bill to enjoin the work, on the ground that no compensation had been tendered.

This court, in *Beatty* v. *Brown*, 34 Miss. R., have decided that where the statute has provided a particular mode for ascertaining compensation, that mode alone shall be pursued. Of course the court must be understood to mean that the mode prescribed shall be a compliance with the Constitution. Moreover, it may be suggested that the court did not mean to say that the owner was bound at his peril to institute proceedings to divest his title, or to ascertain the damage, for this would conflict with the Constitution

and the case of *Thompson* v. *Grand Gulf Bank.* The principle on which the opinion proceeds is, that if the corporation or agents of the State shall, in the mode pointed out, proceed to divest the owner's right, or to have his damages assessed, and tender them, this shall bar any other remedy. Property cannot be taken without the owner's consent, on the idea that he has a remedy by which he may obtain satisfaction. This was always his right. It is the duty of those who propose to take his property to resort to the method pointed out to ascertain its value, and then to tender it to him. Otherwise, the right to have compensation *first made* is taken away. If it is once conceded that the property may be taken without any tender of compensation where the owner refuses his consent, the result would be that the owner might never obtain compensation, the parties might be unable to pay it when it was ascertained, and yet the appropriation of his property completed.

It will be observed that the jury were empanelled under the Act of 1850, and under the 6th section of that Act, Acts 1850, p. 222, and did estimate under the direction of the board the "advantages," which of course were merely speculative.

*W. L. Nugent,* on same side,

Filed an elaborate argument on the point made in the bill denying the authority of the defendants to engage in the work of constructing the levee; but as the court did not decide on the questions discussed by him, it is not deemed necessary to report his argument.

*W. Yerger,* for appellee.

The right of eminent domain, or inherent sovereign power, incident to all governments, authorizes the legislature to control private property for public uses.

This right was exercised by the English government without any limit but the discretion of the state.

Our Constitution has wisely regulated the exercise of this power, by declaring that private property shall not be taken for public use " without *just compensation* being first made."

Similar provisions exist in most, if not all the States in this Union; and the legislatures, in most of them, provide by laws,

authorizing the use of private property by the public, the mode in which "just compensation" may be fixed or ascertained.

In most of the States, it has been held, that the jury, in fixing the compensation, may take into consideration the enhanced value which will be given to the property taken by the projected improvements.

Such have been the decisions by the courts in Pennsylvania, Ohio, New York, Massachusetts, Virginia, and perhaps others. A reference to these decisions was made by the circuit judge in the opinion delivered by him in the court below, to which opinion I refer the court.

This court, in the case of *Dudley Isom* v. *Mississippi Central Railroad*, 36 Miss. 300, decided that a party was entitled to the actual value of his property, to be paid in *money*, *before* it was taken for the use of the public.

I understand the rule laid down in this case to extend only to the speculative value which railroads are estimated by some to give to property through which they pass, and not to direct and immediate value, which a work of permanent improvement adds to the property. If intended in any more extended sense, I think it is not warranted by a sound construction of the language or spirit of the Constitution.

The language of that instrument is peculiar. It does not declare that a party shall be paid the value of his property, when taken by the public, but "*just compensation* shall be *made*," &c. Now the idea of compensation, or just compensation, does not necessarily include a payment in money; on the contrary, the natural signification of those words rather exclude it.

"To compensate," is "to give or return an equivalent," to "weigh one thing against another," and is derived from the Latin *compensare*, to weigh together one thing with another. It is true, "just compensation" may be made in money; but it is also no less true, that it may be made in many different modes. Take the case before the court. The plaintiff in this case is the owner of a tract of land, subject to annual inundation from the floods of the Mississippi.

These floods injure others besides himself, and the public determines to erect a levee—to make a breakwater against the river—

and goes upon the land of the defendant, using so much of his soil as is necessary for that purpose.

Now is it not palpable that the protection and security thus given to his property, to say nothing of the increased value of it by the work, is a compensation, an equivalent for the property used, and therefore properly taken into the estimate of the amount to be paid him ?

The benefit is direct, immediate, and permanent, although the work affords incidental protection and benefit to the public. To him the protection is direct and immediate, and he ought not to claim additional compensation, if the immediate benefit is equivalent to the value of the property used.

This is the rule of equity. If one man enter upon the lands of another, and put thereon valuable permanent improvements, increasing the value and adding to its enjoyment, a court of equity will set-off against the claim of the owner for the use of his property, the value of the improvements permanently put upon it; and, in some instances, equity will charge the improvements on the land itself. Story's Eq. § 1237, note 2.

But this court, in the case of *Brown* v. *Beatty*, held that direct injury or damages was to be taken into consideration by the jury. If no direct benefit or advantage, the converse must also be considered. The question is entirely a question of damage and compensation.

But the present case may be sustained upon another and very clear ground.

By the common law, it is lawful to pull down houses to prevent the spreading of a conflagration, and being cases of urgent necessity, no action lay at common law at the suit of the party who sustained the injury. It was "*damnum absque injuria.*" 2 Kent Com. 339, 397; Dyer's R. 366; 1 Dallas's R. 363; 4 Term R. 797; 1 Zabriskie's (N. J.) R. 248.

This is a common law right, not the exercise of the right of eminent domain by the State, but a right which even individuals might exercise.

The right to use a portion of a man's land, to keep away the raging and destroying flood of the Mississippi, to prevent the spread of its devastating influence, and to protect the community

from the great loss which it might and would sustain, is certainly as clearly within the common law principle as the tearing down of a man's house to prevent the spread of a conflagration.

The injury from the flood is as great, as certain and inevitable, with prompt action, as the injury from fire, and the law which would justify action in the one case would in another.

But again. It is by no means clear that the legislature could not compel the owners of land on the river to erect levees at their own expense.

It has been held, that the proprietors of lots may be compelled to keep the streets in repair in front of them, for the use of the public, and that this power is embraced under the taxing power.

Such a power is regularly exercised in the law requiring labor on public roads. See 3 Cushm. R. 458; 16 Pickering R. 504.

Several other points were made in the court below against the dissolution of the injunction, on which the opinion of the court is very clear and satisfactory, and to that I refer.

HARRIS, J., delivered the opinion of the court.

The plaintiff in error filed his bill in the Chancery Court of Washington county, praying an injunction against the erection of a levee across his premises, until compensation should be made to him for taking and applying his property to the public use, and for other reasons not necessary to be noticed here.

The injunction was granted on the 4th February, 1859. On the 26th February, 1859, defendants filed their answer, in which, among other things, it is stated, that since the filing of said bill (on the 21st February, 1859), the board of police for said county ordered the sheriff to summon twelve freeholders—a jury—to assess the damages complained of in said bill; that said jury assembled on the 24th February, 1859, and returned a verdict (Exhibit B.); this verdict shows, on its face, that the jury "*after taking into consideration the advantages and disadvantages* (of said levee), to the said complainant, Penrice," assessed "no damages."

The answer further states, that defendants consider the old levee very insecure against the next high water, as the bank of the river has fallen in, to within a few feet of the base of said levee, and that the river is rising rapidly, and prays a dissolution of the injunction.

Penrice *v.* Wallis et al.

The chancellor, on hearing the motion to dissolve, in vacation, sustained the motion; from which decision an appeal was prayed and allowed, and the cause brought here.

The first error assigned is, that the chancellor erred in dissolving the injunction.

This necessarily results from the principles settled by this court in the late cases of *Brown* v. *Beatty*, 34 Miss. R. 227, and *Isom* v. *The Miss. Cent. R. R. Co.*, 36 Miss. 300; unless it could be made to appear that the case falls within the principle of *necessity*, or *of public protection*, which demands immediate action, and cannot be made to await the delays necessarily incident to judicial proceedings. It is readily conceded that such public emergencies may exist as will admit of no restraint. Such are the calamities of fire, of war, of pestilence, of famine, where the great principles of self-preservation are as important and as applicable to states or communities as to individuals. And the same principles are equally applicable to impending imminent danger from flood as from fire. But in either case, to justify the abandonment of all attempt at *legal* redress, the *imperative necessity* must be at least *apparently present*. As long as there is ample time and opportunity to resort for remedy to the aid of the law, the plea of *necessity* affords no excuse, because of its falsity. The answer, in the case before us, really does not present such a plea. It does not pretend to set up such overwhelming necessity, in the face of the facts on the record. Indeed, such a position is negatived by the statement in the record, that after the bill was filed, and the injunction obtained, *resort was had* to a jury, by order of the board of police; and that jury, pursuing the provisions of the 6th section of the Act of 1850, instead of giving the plaintiff in error just compensation, in money, for the taking and application of his land to the public use, according to the command of the Constitution, paid him off in the probable benefits to result to him from saving his property from a prospective flood.

In the case above cited, upon full deliberation and examination of the conflicting opinions, in the different States of the Union, this court has pronounced such compensation unconstitutional, and the act directing it, void. We have only to add, that we are satisfied

Penrice *v.* Wallis et al.

with that opinion, and refer to the reasoning by which it is supported in the cases cited.

The second error complained of, was the order or decree of the chancellor, allowing the defendants to proceed to construct the levee, after granting the appeal, from the order dissolving the injunction.

This was error : first, for the reason already stated, that "*just compensation*" had not been "*first made ;*" and second, because an appeal from an order dissolving an injunction, *if allowed*, suspends the operation of the decision and decree appealed from, necessarily; else the appeal is allowed and disallowed by the same judgment. Such a decree would be repugnant on its face.

The last error assigned is, that there was not sufficient notice of the motion to dissolve.

The record shows that the parties were both present, by themselves and counsel, on the hearing of the motion. No objection seems to have been then urged on this point. We think it therefore too late to insist on it here.

Let the order and decree of the court below be reversed, and cause remanded for further proceedings.

NOTE.—Judge Yerger delivered an elaborate written opinion on dissolving the injunction, in which he held the reverse of the rule laid down in *Beatty* v. *Brown*, and *Isom* v. *Miss. Cent. R. R. Co.*, and in support of this view he cited the following cases : *Penn. R. R. Co.* v. *Heister*, 8 Barr, 445 ; *McMasters* v. *Commonwealth*, 3 Watts, 229–295 ; *Symonds* v. *City of Cincinnati*, 11 Ohio R. 174 ; *People* v. *Mayor, &c., of Brooklyn*, 4 Comstock, 419 ; *Freeman Street* (matter of), 17 Wend. 649 ; *Lynch* v. *Mallony*, 4 Denio R. 356 ; *Roxford* v. *Knight*, 15 Barb. R. 627 ; *Commonwealth* v. *Coombs*, 2 Mass. 492 ; *Commonwealth* v. *Sessions of Middlesex*, 9 Ib. 31 ; *Meacham* v. *Fitchburg R. R. Co.*, 4 Cushing, 291 ; *Upton* v. *South Reading R. R. Co.*, 8 Ib. 600 ; *Luther* v. *Winnisimmit*, 9 Ib. 171 ; *Satterlee* v. *Matthewson*, 16 Serg. & R. 179 ; *James River & Kanawha Co.* v. *Turner*, 9 Leigh. 413 ; Angell on Highways, §§ 115, 116, and notes.