# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-01355-SCT

*E. DEAN MORLEY*

*v.*

*JACKSON REDEVELOPMENT AUTHORITY AND*
*ATCCO REALTY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/1/2002 |
| TRIAL JUDGE: | HON. WILLIAM R. BARNETT |
| COURT FROM WHICH APPEALED: | HINDS COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEYS FOR APPELLEES: | W. WHITAKER RAYNER |
| | ZACHARY TAYLOR, III |
| | RICHARD MONTAGUE |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| DISPOSITION: | AFFIRMED - 06/10/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., EASLEY AND GRAVES, JJ.**

**GRAVES, JUSTICE, FOR THE COURT:**

¶1.     This case comes to us on appeal from the Special Court of Eminent Domain of Hinds County. After the trial court found that E. Dean Morley no longer had an interest in the King Edward Hotel and Garage, he was dismissed from the eminent domain proceedings concerning the property. Morley then filed this pro se appeal focusing on two issues. First, Morley argues he is entitled to interest earned on the property after a judgment was entered regarding its value. Secondly, he argues that he is entitled to

attorneys' fees. After a review of the facts and relevant case law, we find that neither of these issues has merit. Thus, we affirm.

## BACKGROUND

¶2.     The first incarnation of the King Edward Hotel was the Confederate House, built by Major R.O. Edwards in 1861. Mary Carol Miller, *Lost Landmarks of Mississippi* 49 (2002). Major Edwards also founded the Mississippi town which bears his last name. *Jackson Landmarks* 156 (Junior League ed. 1982). The Confederate House burned to the ground in 1863; General William Tecumseh Sherman believed some of his men, Union soldiers formerly held prisoner at Shiloh, caused its destruction. Miller, at 49-50. The hungry soldiers stopped for dinner at the Confederate House, but "had nothing to pay [with] but [Union] greenbacks, which were refused, with insult, by th[e] . . . landlord." *Id.* at 50. The offended soldiers thus "had quietly and stealthily applied the fire underneath the hotel just as [they] were leaving town." *Id.*

¶3.     The property next came to life as the Edwards House, which was all of three stories. While "Major Edwards began rebuilding the hotel in 1867," he "died before it was completed . . . in 1868." *Jackson Landmarks*, at 156. The Edwards House was the center of political activity during the legislative sessions, even billing itself out as the "Commercial and Political Headquarters for the State." *Id.* at 156, 158. It even housed a governor, for when "the Governor's Mansion was undergoing renovation in 1908, the Edwards served as the official residence of Governor Edmond F. Noel." *Id.* at 158. Representative Walter Sillers, a longtime Speaker of the Mississippi House of Representatives, also lived at the various hotels on the site from 1916 until the 1960's. *Id.*

¶4.    In 1923 the building was demolished to make way for the twelve-story landmark familiar to Jacksonians today. *Id.* In 1959 the hotel was purchased and renamed the King Edward—only to close its doors in the summer of 1967. It has not reopened in nearly four decades.

¶5.    Empty and decrepit, the King Edward still attracted interest. In 1981, E. Dean Morley and Margaret M. Laurence purchased the relic for $450,000—roughly $900,000 in today's money. A handful of years later the City of Jackson, through its urban renewal agency, the Jackson Redevelopment Authority (JRA), decided to purchase the property. Morley and Laurence refused their offers, and in 1989 the JRA filed suit to condemn the property.

¶6.    In the nearly fifteen years following the complaint, the resulting litigation has gone through two different trial judges, a number of lawyers, racked up hundreds of thousands of dollars in legal fees, warranted a reported case, and is on its second trip to this Court. *See **Morley v. Jackson Redev. Auth.***, 632 So. 2d 1284 (Miss. 1994).

¶7.    The jury in the first trial determined $500,000 was appropriate compensation for the property. ***Id.*** at 1286. On appeal of that decision, we affirmed in part and reversed in part decisions of the Special Court of Eminent Domain of Hinds County. The case was remanded to, inter alia, determine if the JRA had a "primarily public use" for the land that would support a taking. ***Id.*** at 1288-91.

¶8.    There were originally two interests in the King Edward—Laurence and Morley's. After the remand, Laurence transferred her interest to the Margaret M. Laurence Revocable Trust; she later passed away, leaving trusteeship of the Trust in the hands of Morley, her son James R. Laurence, and Jon R. Muth. The Trust still has an interest in the King Edward today.

3

¶9.     Morley fell on hard times after the verdict, eventually declaring bankruptcy. At one point there was roughly $260,000 in charging liens asserted against the potential judgment by his various attorneys.[1] Morley's interest in the King Edward was purchased by Atcco Realty, Inc., at a sheriff's sale in 2001. Morley has admitted that he no longer has an interest in the King Edward property and that is not a question in this appeal. The Trust and Atcco—as the new parties-in-interest—subsequently entered into a Final Agreed Order of Dismissal Pursuant to Settlement with the JRA. It is the result of these proceedings that compels Morley to appeal.

¶10.    During the litigation the $500,000 awarded by the judgment was placed into the registry of the court. It continued to accrue interest until the Trust and Atcco settled with JRA in 2002. Morley, who proceeds in this appeal without counsel, questions if he is entitled to the interest that accrued on the funds that were held in trust for him. We answer that question in the negative.

---

[1] These liens were dismissed by the trial court, and the various lawyers and firms withdrew their appeal of that issue to this Court.

## DISCUSSION

¶11.     This Court reviews decisions of a special court of eminent domain as it would any trial court. *See Miss.  State Highway Comm'n v. Viverette*, 529 So. 2d 896, 900 (Miss. 1988); *State Highway Comm'n of Miss. v. Havard*, 508 So. 2d 1099, 1105 (Miss. 1987).[2]  We review questions of law de novo, and we will not overturn findings of fact where they are supported by substantial evidence in the record unless there was abuse of discretion by the trial judge or the findings were manifestly wrong or clearly erroneous. *See In re Williamson*, 838 So. 2d 226, 233 (Miss. 2002).

¶12.     After the initial takings of the King Edward by the JRA and the decision of this case during its original litigation, the $500,000 awarded by the jury was placed on deposit with the Circuit Clerk of Hinds County for safekeeping and to earn interest.  While he lost his stake in the King Edward itself, Morley asserts the novel theory that he is entitled to the interest that accrued while the property was still owned by him.

¶13.     "The right of *eminent domain* is an inherent and essential element of sovereignty    . . . [which] results from the social compact." *Brown v. Beatty*, 34 Miss. 227, 239 (1857).  Even in the early United States, property could be taken from a landowner with no compensation. *See* William Michael Treanor, *The Original Understanding of the Takings Clause and the Political Process*, 95 Colum. L. Rev. 782, 787-91 (1995).  In fact, the adoption of the Fifth Amendment to the United States Constitution "'was probably intended to restrain the arbitrary and oppressive mode of obtaining supplies for the army, and other public uses, by impressment, as was too frequently practised during the revolutionary war.'" *Id*.

---

[2] Eminent domain proceedings can also be brought in chancery court in special circumstances. The scope of review in those cases is the same as "our limited scope of review of findings of a chancellor." *Gulf Park Water Co. v. First Ocean Springs Dev. Co*., 530 So.2d 1325, 1330 (Miss. 1988).

at 791-92 (quoting the legal scholar St. George Tucker, who was "the first legal scholar to offer an interpretation of the [takings] clause" in his 1803 edition of Blackstone's *Commentaries*).

¶14.    Yet Morley has conceded he no longer has a right in the King Edward itself or even a stake in the eminent domain proceedings. While he argues a right to the interest that accrued on the jury's award while it was held on deposit, there is a "general rule that 'interest follows principal.'" ***Phillips v. Washington Legal Found.***, 524 U.S. 156, 167, 118 S.Ct. 1925, 1930, 141 L.Ed.2d 174 (1998). That general rule "has been established under English common law since at least the mid-1700's." ***Id.*** at 165.[3] Accordingly, "this rule has become firmly embedded in the common law of the various States." ***Id.*** So in many cases, "regardless of whether the owner of the principal has a constitutionally cognizable interest in the *anticipated* generation of interest by his funds, any interest that *does* accrue attaches as a property right incident to the ownership of the underlying principal." ***Id.*** at 168 (emphases in original).

¶15.    While ***Phillips*** was an interest on lawyers' trust account (IOLTA) case, ***id.*** at 159, the general rule is correct and still applicable to this situation. After the $500,000 judgment was entered to compensate the taking of the King Edward, Morley might have attempted to sell or transfer his stake in the property. He did not do so. Since Morley has lost his right to the principal, he has no right to any interest that has accrued upon it.

¶16.    Morley also argues that he is entitled to attorneys' fees pursuant to Miss. Code Ann. § 11-27-37 (1972). As his interest in the King Edward was substituted before the matter was dismissed, this point is moot.

## CONCLUSION

---

[3] English judges decreed that "'interest shall follow the principal, as the shadow the body.'" ***Id.*** at 165 (quoting ***Beckford v. Tobin***, 1 Ves. Sen. 308, 310, 27 Eng. Rep. 1049, 1051 (Ch. 1749)).

¶17.    Because he forfeited his principal stake in the King Edward, Morley has no right to the interest which accrued on it over the years or attorneys' fees.  Accordingly, we affirm the trial court's judgment.

¶18.    **AFFIRMED**.

**SMITH, C.J., WALLER, P.J., EASLEY, CARLSON, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**